**Herbert McDuffy, Jr., Esquire** (Atty. ID# 010682000)
200 Campbell Drive, Suite 103E
Willingboro, New Jersey 08046
856-505-8706
610-453-4015
hmcduffy@aol.com
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ARMENTO KIRKLAND | : | DOCKET NO: |
| | : | |
| Plaintiff | : | |
| v. | : | Civil Action |
| | : | |
| | : | **COMPLAINT AND JURY DEMAND** |
| | : | |
| SRI INTERNATIONAL | | |

and

ROBERT HARRIS
Director of Contracts
SRI International-East Coast Operations

and

MICHELE LEAHY
Human Resources
SRI International

and

DANIELLE GOLDOVITZ

and

JOHN DOES 1-10
Defendants

Plaintiff, Armento Kirkland, by and through her attorney Herbert McDuffy, Jr., does hereby file this Complaint and avers the following:

**PRELIMINARY STATEMENT**

1. This action is brought against SRI International (SRI) and all named Defendants under Title VII of the Civil Rights Act, 42 U.S.C. section 2000 et seq. as amended (hereinafter Title VII), The New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to 10:5-49,(hereinafter NJ LAD) for affirmative and declaratory relief, back pay, compensatory damages and other relief deemed just by this Honorable Court. The injuries suffered by the Plaintiff are the result of intentional discrimination in the forms of unlawful retaliation, hostile work environment and disparate treatment based on race. A reasonable person in the Plaintiff's position would be similarly injured and aggrieved.

**JURISDICTION**

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343 (4).
3. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C Section 1367.

**VENUE**

4. Venue is proper under 28 U.S.C. Section 1391 (b) and (e). Defendants' conduct occurred in Princeton New Jersey which is in the federal jurisdiction of the District of New Jersey. All the claims herein arose within the jurisdiction of the United States District Court for the District of New Jersey and involve Defendants who reside or were employed within its jurisdictional limits.

**INTRODUCTION**

5. Plaintiff seeks damages for the malicious, intentional discrimination inflicted upon her by Defendants in the forms of retaliation, hostile work environment and disparate treatment based on race.

6. Plaintiff made timely dual filings with the Equal Employment Opportunity Commission (E.E.O.C) and the New Jersey Division on Civil Rights (NJDCR) on January 14, 2013.

7. A 'Right to Sue' letter dated March 17, 2017 was delivered to Plaintiff on March 20, 2017.

8. The acts that are the subject of this Complaint were made by all Defendants acting pursuant to their official duties as supervisors and employees of the Defendant, SRI International.

9. Plaintiff's 'Right to Sue' letter is at Exhibit A.

**PARTIES**:

10. Plaintiff, Armento Kirkland, is a Black female. She is an adult resident of the State of New Jersey. At all relevant times she was employed by SRI International at its facility in Princeton, New Jersey and was the only African American employee in her assigned section.

11. Defendant, SRI International is a non-profit research institute and federal defense business contractor and subcontractor. At all relevant times, Plaintiff was employed as a Contracts Assistant for SRI International –Contracts - East Coast Operations.

12. Defendant Robert Harris was the Director of Contracts – East Operations at SRI International's Princeton facility. At all relevant times, Harris was Plaintiff's supervisor while she was employed by SRI International.  Harris is a white male.

13. Michelle Leahy was the SRI Human Resources contact that interacted with Plaintiff Kirkland and Defendant Robert Harris while Kirkland was an employee at SRI.

14. Danielle Goldovitz was the SRI employee to whom Kirkland was assigned as an assistant. Goldovitz prioritized and directed Kirkland's daily work activities. Goldovitz is a white female.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15. Plaintiff incorporates all of the preceding paragraphs as if set forth at length herein verbatim.

16. On February 21, 2012, Plaintiff Armento Kirkland accepted a position with Defendant SRI as a 'Contract's Assistant' at the SRI – Sarnoff East Coast Contracts Group located at Princeton New Jersey. Kirkland's first day on the job was February 27, 2012.

17. Kirkland participated in the 30-day SRI orientation process from February 27, 2012 through March 29, 2012. During that time she was confronted by open hostility and rude treatment from Danielle Goldovitz, the SRI employee designated to supervise her daily work activities. SRI emails identified Kirkland as Goldovitz's 'assistant'.

18. Kirkland completed SRI's online orientation classes on March 29, 2012. However, she never received the 'one -on one' orientation interview from her supervisor, Robert Harris, as required by SRI policy and its orientation checklist.

19. Kirkland never received formal training for the responsibilities she assumed pursuant to her employment at SRI.

20. Kirkland was assigned to Goldovitz as an assistant. She was the only African American working in Goldovitz' s section, and in the SRI East Coast Operations Contracts office.

21. Goldovitz's open distain and animus towards Kirkland was apparent from Kirkland's first day on the job and was exemplified by demeaning speech and gestures directed toward Kirkland in front of the other workers, door slamming and social exclusion. Kirkland did nothing to warrant this mistreatment.

22. Kirkland was required to perform complex SRI specific contract administration duties but never received the full measure of training, the equipment nor technical support that white employees received from SRI.

23. Despite the lack of training and support provided white SRI employees, Kirkland trained herself and became increasingly proficient and error free during her tenure at SRI. Her accomplishments were recognized by her peers by way of favorable comments and written recognition from other work colleagues.

24. Despite Kirkland's competent and continually improving job performance, she was 'nit picked' and criticized for errors that were regularly overlooked by others. For example, errors made by Goldovitz and Nicole Swartz, another white employee, were ignored. Less serious immaterial errors made by Kirkland were magnified and criticized. Kirkland was criticized for errors made by other employees several times.

25. Errors attributed to Kirkland were at times manufactured. Once, after Kirkland complained about workplace mistreatment to Harris, key files were deliberately 'mis-arranged' so that Harris could not find them when he demonstratively went to retrieve them.

26. There were no performance issues when Kirkland assumed Goldovitz's duties during her vacation and sick leave absences.

27. On September 24, 2012, seven months into her employment with SRI, Kirkland had her first one-on-one meeting with her supervisor, Robert Harris. Michelle Leahy from SRI Human Resources participated in the meeting via telephone. Harris told Kirkland that she had made much progress on the job but that Goldovitz had written up areas of concern for him to discuss with her. During the meeting, Kirkland complained to Harris about the treatment she was receiving from Goldovitz; rude behavior, disparate treatment, lack of work equipment and IT support needed for efficient job performance that was given to white employees and open demeaning hostility in the workplace. Harris was dismissive and unconcerned. A performance memorandum from Harris was given to Kirkland on September 24, 2012.

28. On September 25, 2012, Kirkland responded via email to the Harris memorandum. She complained of being subjected to unfair treatment by Goldovitz. She believed her response to Harris would cause him to investigate her complaints. Instead, she was subjected to retaliation. Kirkland copied Michelle Leahy, SRI Human Resources, on her email response to the Harris performance memorandum.

29. On October 1, 2012, Kirkland received an email from Leahy to call her on October 2, 2012.

30. On October 2, 2012, Kirkland discussed the matter with Leahy via telephone. Leahy asked Kirkland if she thought the disparate treatment was based on Kirkland’s race. Kirkland said she wasn’t sure. Kirkland explained that while no one had made openly racial comments towards her, she was the only African American in the East Coast Contracts Operations group and she was being treated more harshly than everyone else in

that section. For example, only Kirkland's mistakes were reported. Mistakes made by others, including those made by Goldovitz, were not reported.

31. Kirkland suggested weekly progress meetings with Harris and Goldovitz. Leahy agreed. Kirkland also asked to be given a written job description for the position of Contract Assistant. Leahy thought that was a good idea. Harris never provided the job description.

32. On October 8, 2012, Leahy provided the job description for Contracts Assistant.

33. On November 16, 2012 Harris gave Kirkland another job performance memorandum. Harris writes that he still has "concerns" regarding Kirkland's job performance. When Kirkland asked Harris what specific complaints were made about her work, Harris told her that there were no complaints made by anyone about her work.

34. On November 29, 2012, during a performance review with Goldovitz and Clarke Argue, a supervisor substituting for Harris, Kirkland was criticized for making mistakes on deliverables. When Kirkland asked what specific mistakes she made, neither Goldovitz nor Argue responded with an example or an explanation. During the meeting Goldovitz conceded that Kirkland was performing well in several areas.

35. During the meeting on December 11, 2012 Kirkland received positive feedback from Harris that indicated things were going well and that he was satisfied with her job performance.

36. On December 19, 2012, Harris entered Kirkland's office space accompanied by a security guard and told Kirkland she was terminated from employment with SRI. Kirkland was terminated without warning and escorted by SRI Security from the premises.

37. The termination letter issued to Kirkland by Harris was based on a material falsehood. It cites as the reason for termination a delayed shipment that caused SRI a financial loss

because it had not been recorded properly. Kirkland was never given specifics about the alleged failure or afforded an opportunity to explain what happened. Plaintiff believes and avers that the false allegation was a pretext to terminate her from employment.

38. Plaintiff Kirkland believes and avers that she suffered disparate treatment in the workplace from Goldovitz and Harris because she is African American.

39. Plaintiff Kirkland believes she suffered retaliation in the form of humiliating mistreatment and denial of equipment issued to white co-workers because she complained to Leahy about how she was treated by Goldovitz and Harris.

40. Plaintiff Kirkland believes and avers that the facts set forth herein describe a hostile work environment and would be viewed as such by a reasonable similarly situated person.

**COUNT ONE**

**RETALIATION**

41. Plaintiff adopts and incorporates paragraphs 1 through 40 herein as if set forth at length.

42. Plaintiff avers that retaliation was directed against her by Defendants after she complained of discrimination and mistreatment in the workplace. Complaining about racial discrimination is a protected activity.

43. Plaintiff suffered an increase in adverse actions directed against her by Defendants Goldovitz and Harris after she complained that she was the only black person in her section and that she was being more harshly than white employees. Plaintiff's nominal mistakes were criticized while mistakes of greater import made by white employees were ignored. Plaintiff was repeatedly addressed in harsh rude tones in front of the others employees, all of whom were white.

44. Defendant Leahy asked Plaintiff if she thought her treatment was based on race. Plaintiff

said she did not know but reminded Leahy that she was the only African American in the section and that she was being disparately treated in a harsh, rude, disparate manner while the white employees were not so treated.

45. In a memorandum memorializing their conversation, Defendant Leahy stated that Plaintiff said race was not a factor when in fact Plaintiff had indicated that race might be a factor. Plaintiff's complaints about how Goldovitz and Harris were treating her were never investigated by the SRI Human Resources Department.

46. Subsequent to Plaintiffs complaints to Defendant Harris and Defendant Leahy of the SRI Human Resources department, the hostile acts directed at her increased in frequency and import. They included continued criticism for errors made by others, disparate criticism for errors when the errors made by white employees were ignored, sabotage of her files in the manner described herein above, and being publically humiliated by Goldovitz in front of the other employees by way of speech and mannerisms. Goldovitz's conduct was tolerated by Harris.

47. Plaintiff avers that there was a causal connection between her complaints to Harris and Leahy and the increased frequency and import of the disparate adverse workplace actions directed against her, the only African American employee in the section, based on the timing of her complaints and the ensuing disparate treatment. Plaintiff acted in good faith and under reasonable belief that she was the recipient of race based disparate treatment when she complained about Goldovitz and Harris' race based adverse conduct. Shortly after the complaints were made, Goldovitz and Harris increased retaliatory actions against Plaintiff.

48. Plaintiff believes and therefore avers that there is a nexus between her complaints about

disparate treatment and the increased frequency and intensity of disparate treatment directed towards her by Defendants.

49. As a direct result of the foregoing, Plaintiff suffered public humiliation, loss of employment and extreme emotional distress for which she continues to receive clinical treatment.

**WHEREFORE**: Plaintiff demands judgment against Defendants in an amount in excess of $500,000 plus interest, costs, attorney's fees and punitive damages.

**COUNT TWO**

**HOSTILE WORK ENVIRONMENT**

50. Plaintiff adopts and incorporates paragraphs 1 through 49 herein as if set forth at length.

51. Plaintiff, as the only African American in work section, believes and avers that she was subjected to racial discrimination because of the publically humiliating vitriolic manner and frequency of the mistreatment directed against her by Goldovitz, and the fact that no white employees were mistreated. The nature of the mistreatment infers racial animus.

52. When Plaintiff complained, Harris and Goldovitz increased the frequency and seriousness of their actions against Plaintiff. For example, Plaintiff believes and avers that Goldovitz and Harris had a role in 'staging' the misfiled document's incident described in preceding paragraphs to embarrass Plaintiff and to build a case for termination of employment.

53. Plaintiff was humiliated, demoralized and made anxious about keeping her job by the treatment she received. She was not able to ameliorate the situation despite her best diplomatic efforts and ever improving job performance. Goldovitz and Harris were

reduced to concocting imaginary performance errors that were subsequently disproved when they confronted Plaintiff with the same.

54. Plaintiff believes and avers that a reasonable person in her protected class, an African American female, subjected to the same treatment, would have been detrimentally affected by the actions of Defendants as described in this Complaint.

55. Plaintiff avers that defendants in their supervisory capacities are liable for their actions as set forth in this Complaint. Plaintiff also believes that employer SCI is responsible for the actions of the named supervisory defendants under theories of agency and Respondeat Superior.

56. As a direct result Defendant's actions, Plaintiff has suffered, racial discrimination, public humiliation, emotional distress and loss of employment.

**WHEREFORE**: Plaintiff demands judgment against Defendants in an amount in excess of $500,000 plus interest, costs, attorney's fees and punitive damages.

**COUNT THREE**

**RACIAL DISCRIMINATION – DISPARATE TREATMENT**

57. Plaintiff adopts and incorporates paragraphs 1 through 56 herein as if set forth at length.

58. Plaintiff, a black female, is a member of the protected class envisioned by Title VII and the NJLAD.

59. As established by the facts in the preceding paragraphs, Defendants, without justification intentionally discriminated and condoned acts of intentional discrimination by subjecting her to acts that included: verbal public humiliation, reporting false facts to superiors that cast Plaintiff in a bad light and suggested incompetence,

sabotaging her files, and failing to investigate complaints made by Plaintiff to Defendant Leahy about being singled out for adverse disparate treatment. White employees were not subjected to his kind of treatment.

60. Plaintiff's treatment worsened after she complained to Harris and Leahy.

61. Plaintiff was qualified for the positon of Contracts Assistant. Her supervisors grudgingly acknowledged her improved performance. Plaintiff received performance recognition from her peers acknowledging her outstanding workplace accomplishments.

62. Despite her competent job performance, Plaintiff was subjected to unwarranted adverse employment actions by Defendants as previously described including but not limited to; unwarranted criticism for contrived errors while errors made by white employees were ignored, public verbal humiliation, sabotaged files and ultimately termination without cause.

63. Plaintiff believes the aforementioned actions against her were fueled by racial animus because she was the only African American assigned to her section and she was regularly singled out for public humiliation by Defendant Goldovitz for contrived errors. Errors committed by white employees were tolerated and concealed.

64. Based on the foregoing, Plaintiff believes and avers that the inference of racial discrimination was palpable. A reasonable person in Plaintiff's position would have been similarly offended and injured.

65. As a direct result Defendant's actions, Plaintiff has suffered, racial discrimination, public humiliation, emotional distress and loss of employment.

**WHEREFORE**:  Plaintiff demands judgment against Defendants in an amount in excess of $500,000 plus interest, costs, attorney's fees and punitive damages.

**COUNT FOUR**

**RESPONDEAT SUPERIOR**

66. Plaintiff adopts and incorporates paragraphs 1 through 65 herein as if set forth at length.
67. At all times relevant hereto, Defendants Goldovitz, Harris and Leahy were employed by, and were agents, servant and/or employees of Defendant SRI International (SRI).
68. The above-described acts and omissions of Defendants Goldoitz, Harris and Leahy were committed within the scope of their employment with Defendant SRI, in that they were committed while on duty and while they were acting in furtherance of Defendant SRI's business interests.
69. Defendant SRI is responsible for all of the wrongful acts committed by Defendants because the acts, omissions were committed while working within the scope of their assigned duties and the results were foreseeable.
70. As a direct result Defendant's actions, Plaintiff has suffered, racial discrimination, public humiliation, emotional distress and loss of employment.

**WHEREFORE**: Plaintiff demands judgment against Defendants in an amount in excess of $500,000 plus interest, costs, attorney's fees and punitive damages.

**COUNT FIVE**

**INFLICTION OF EMOTIONAL DISTRESS**

71. Plaintiff adopts and incorporates paragraphs 1 through 70 herein as if set forth at length.
72. Defendants Goldovitz, Harris and Leahy acting in a manner commensurate with their positions as supervisors at SRI acted with reckless, callous disregard and invidious

intent when they harassed, discriminated against and created a hostile working environment for Plaintiff as set forth in the preceding paragraphs of this Complaint.

73. To reiterate, Goldovitz verbally abused and humiliated Plaintiff in front of peers, falsely accused her of workplace errors and subjected her to unwarranted disparate treatment. Defendant Harris was made aware of the disparate treatment by Goldovitz and took no action to remedy or to investigate Plaintiff's complaints. Instead, he participated in the disparate treatment as set forth in the preceding paragraphs of this Complaint. Defendant Leahy was made aware of Plaintiff's complaints about treatment in the workplace but chose to conceal the racial component of Plaintiff's complaints.

74. By reason of the Defendants' conduct, Plaintiff has suffered public humiliation and emotional distress with accompanying physical manifestations.

**WHEREFORE**: Plaintiff demands judgment against Defendants in an amount in excess of $500,000 plus interest, costs, attorney's fees and punitive damages.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/S/Herbert McDuffy, Jr,_____________
HERBERT MCDUFFY, JR., ESQUIRE
200 Campbell Drive
Suite 103E
Willingboro, NJ 08046
856-505-8706
hmcduffy@aol.com

Dated: June 19, 2017

**CERTIFICATE OF SERVICE**

**I, Herbert McDuffy, Jr. Esquire, hereby certify that on this date I electronically filed the Plaintiff's Complaint and that it is available for viewing and downloading from the ECF system. Service will be effected in a manner consistent with the Federal Rules of Civil Procedure.**

Dated: June 19, 2017

/s/ Herbert McDuffy, Jr.
Herbert McDuffy, Jr.