**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARMENTO KIRKLAND, | |
| Plaintiff, | |
| v. | Civil Action No. 17-04443-BRM-TJB |
| SRI INTERNATIONAL, et al., | OPINION |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is defendant SRI International's ("SRI") Motion for Dismissal of Count Three in its entirety and Counts Four and Five insofar as they depend, in part, on claims for disparate treatment. (ECF No. 12-1 at ¶ 1.) Plaintiff Armento Kirkland ("Kirkland") opposes the motion. (ECF No. 13 at 1.) Having review the papers submitted in connection with the motion pursuant to Federal Rule of Civil Procedural 78(b), for reasons set forth below, SRI's Motion for Dismissal of Counts Three, Four, and Five is **DENIED.**

### I. BACKGROUND

For the purposes of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Philips v. Cty. of Allegheny*, 515 F. 3d 224, 228 (3d Cir. 2008). Further, the Court considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

This case arises from injuries allegedly suffered by Kirkland as the result of intentional discrimination in the forms of unlawful retaliation, hostile work environment and disparate treatment based on race by defendants Mr. Robert Harris ("Harris"), Ms. Michele Leahy ("Leahy"), Ms. Danielle Goldovitz ("Goldovitz"), and Mr. John Does (together with SRI, "Defendants").[1] (ECF No. 1 ¶ 1.) On February 21, 2012, Kirkland began working as a Contract Assistant at the SRI Sarnoff East Coast Contracts Group in Princeton – she was the only African American in the section. (*Id.* at ¶¶ 16, 20.) Kirkland participated in SRI's 30-day orientation process and completed SRI's online orientation class, but she never received the "one-on-one" orientation from her supervisor, Harris. (*Id.* at ¶¶ 17-8.) Kirkland was assigned to work as Goldovitz's assistant. (*Id.* at ¶ 20.) Kirkland alleges, though she was increasingly proficient and error free during her time at SRI, she was criticized for mistakes while her white counterparts were not criticized for these same mistakes and that she did not have access to work equipment or the IT support needed for efficient job performance. (*Id.* at ¶¶ 24, 27.)

Kirkland also alleges Goldovitz's animus toward her was obvious since her first day. (*Id.* at ¶ 21.) This animus included demeaning speech and gestures, door slamming, and social exclusion. (*Id.*) Kirkland complained to Harris about this mistreatment but was subjected to retaliation – specifically, she alleges certain files were deliberately misarranged. (*Id.* at ¶¶ 25, 27.)

Kirkland spoke with Leahy in human resources about the matter. (*Id.* at ¶ 30.) Leahy asked if Kirkland believed the disparate treatment was based on her race. (*Id.*) Kirkland told

---

[1] To date, SRI is the only defendant that has appeared.

Leahy that no one made racial comments, but she was the only African American in the section, and she was being treated more harshly than everyone else. (*Id.*)

On November 16, 2012, Harris gave Kirkland a performance review stating he had concerns about her job performance. (*Id.* at ¶ 33.) Kirkland alleges Harris was unable to provide specific examples of the complaints about her job performance and there were no complaints made by anyone else about her work. (*Id.*)

On November 29, 2012, Kirkland had another performance review where she was criticized for making mistakes on basic tasks. (*Id.* at 34.) However, Kirkland alleges no one was able to provide specific examples of these errors and her supervisors told her she was, in fact, performing well. (*Id.*) On December 11, 2012, Kirkland had an additional meeting with Harris where she alleges he indicated he was satisfied with her job performance. (*Id.* at ¶ 35.) However, on December 19, 2012, Harris entered Kirkland's office space with a security guard to inform her that she was terminated from employment. (*Id.* at ¶ 36.)

Kirkland filed this matter with the Equal Employment Opportunity Commission and the New Jersey Division on Civil Rights on January 14, 2013. (*Id.* at ¶ 6.) A "Right to Sue" letter dated March 17, 2017 was delivered to Kirkland on March 20, 2017, stating that she had 90 days to bring this cause of action against SRI. (*Id.* at ¶ 7.)

On June 19, 2017, Kirkland filed this complaint against Defendants. (*Id.* at 15.) Kirkland alleges the following counts under Title VII of the Civil Rights Act, 42 U.S.C. § 2000 ("Title VII") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to 10:5-49 ("NJLAD"): (1) retaliation (Count One); hostile work environment (Count Two); racial discrimination – disparate treatment (Count Three); respondeat superior (Count Four); infliction of emotional distress (Count Five). Kirkland seeks affirmative and declaratory relief, back pay,

3

compensatory damages in excess of $500,000 plus interest, costs, attorney's fees, and punitive damages. (*Id.* at ¶¶ 1, 49, 56, 65, 70, 74.)

On November 14, 2017, SRI moved to dismiss Count Three in its entirety and Counts Four and Five insofar as they depend, in part, on claims for disparate treatment, arguing the Court should dismiss Kirkland's employment discrimination claim because she failed to sufficiently allege she was meeting SRI's legitimate employment expectations at the time of termination. (ECF No. 12-3 at 2.) Kirkland opposes the motion but asks the Court to grant her leave to amend the complaint in the event the motion is granted (ECF No. 13 at 1).

## II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

4

the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION

SRI moves to dismiss for failure to state a claim under Counts Three, Four, and Five of the Complaint. Specifically, SRI argues that Count Three for racial discrimination based on disparate treatment should be dismissed for failure to state a claim because Kirkland has failed to allege that, "at the time her employment was terminated, she was performing her job in accordance with her employer's legitimate expectations." (ECF No. 12-3 at 1-2.) In opposition, Kirkland argues the complaint sufficiently alleges a claim for racial discrimination based on disparate treatment because:

> [T]he complaint set forth facts that if believed show [Kirkland's] continuous improvement despite: workplace mistreatment, being denied training equipment and technical support, inexplicable criticisms and a final evaluation of December 11th that she was performing satisfactorily.

5

(ECF No. 13-2 at 5-6.) Count Four, respondeat superior, relies on Count Three in that SRI asserts: because Kirkland insufficiently alleged she was performing her job as Contracts Assistant at a level that met SRI's legitimate expectations at the time of her termination, Kirkland has also insufficiently alleged SRI is responsible for the wrongful acts committed by the other Defendants. (ECF No. 1 at ¶ 69; ECF No. 12-3 at 8-9.) Furthermore, SRI contends Count Five, infliction of emotional distress, fails to state a claim because Kirkland insufficiently alleged she was performing her job at a level that met SRI's legitimate expectations. (ECF No. 1 at 13; ECF No. 12-3 at 8-9.) Therefore, SRI claims it cannot be held responsible for the alleged infliction of emotional distress caused by the other Defendants. (*Id.*) The Court disagrees.

Under New Jersey law, a plaintiff alleging a prima facie case of disparate treatment caused by racial discrimination in violation of Title VII and NJ LAD must show:[2]

> (1) he belongs to a protected class;
> (2) he was performing his job at a level that met his employer's legitimate expectations;
> (3) he suffered an adverse employment action; and
> (4) the employer sought someone who is not a member of the protected class to perform the same work after the plaintiff's termination, or similarly situated employees who are not members of the protected class were not subjected to the adverse action.

*Taylor v. Amcor Flexibles, Inc.*, F. Supp. 2d 501, 506 (D.N.J. 2009). In Kirkland's Complaint, she alleges Harris stated "there were no complaints made by anyone about her work." (ECF No. 1 ¶ 33.) Further, Kirkland alleges when she asked Goldovitz during a performance review what specific mistakes she made, Goldovitz was unable to provide her with an example or

---

[2] For the purpose of this opinion, this Court will not address the first, third, or fourth elements of Kirkland's discrimination claim because they are not challenged by SRI.

explanation. (*Id.* at ¶ 34.) Kirkland also alleges, during the same performance review, Goldovitz conceded Kirkland was performing well in several areas of her job. (*Id.*) Additionally, on December 11, 2012, Kirkland stated Harris indicated during their meeting "things were going well and that he was satisfied with her job performance." (*Id.* at ¶ 35.) Finally, Kirkland contends her accomplishments within the company were recognized "by way of favorable comments and written recognition from other work colleagues." (*Id.* at ¶ 23.)

At this stage in the proceedings, these allegations sufficiently support that Kirkland was meeting SRI's legitimate employment expectations at the time of termination. *See Taylor*, F. Supp. 2d at 506. Kirkland's Complaint does not need detailed factual allegations, and allegations provided in the Complaint are enough to raise a right to relief above the speculative level. *See Twombly*, 550 U.S. at 555. Kirkland's statements are more than legal conclusions "couched as factual allegations." *See Papasan*, 478 U.S. at 286. Therefore, accepting these statements as true for the purposes of this Motion, Kirkland states a cause of action because her claim has facial plausibility. *See Iqbal*, U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *Taylor*, F. Supp. 2d at 506; (ECF No. 1 ¶¶ 23, 33-5.)

Accordingly, SRI's Motion to Dismiss Count Three for racial discrimination based on disparate treatment is **DENIED.** Therefore, SRI's Motion to Dismiss Counts Four and Five insofar as they depend, in part, on claims for disparate treatment is also **DENIED.**

IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Dismissal (ECF No. 12) is **DENIED** with respect to Counts Three, Four, and Five. An appropriate order will follow.

Date: June 29, 2018

*/s/ Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE